Douglas R. Ricks, OSB 044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4861
Fax: 503-241-3731

   Of Attorneys for Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 19-34092-tmb11 |
| Fizz & Bubble, LLC | DEBTOR'S DISCLOSURE STATEMENT (Dated: 07/07/20) |
| Debtor-in-Possession. | |

# Table of Contents

1. STATEMENT OF POSITION OF OFFICIAL UNSECURED CREDITOR'S COMMITTEE.1

2. INTRODUCTION................................................................................................1

3. DEFINITIONS ...................................................................................................3

4. OFFICIAL UNSECURED CREDITORS COMMITTEE...................................3

5. DESCRIPTION OF THE DEBTORS ...............................................................4

    5.1.    Debtor's Organization................................................................................4

    5.2.    Debtor's Business......................................................................................4

6. FINANCIAL HISTORY – PRE-PETITION AND POST-PETITION ...................5

    6.1.    Pre-Petition...............................................................................................5

    6.2.    Post-Petition Operations. .........................................................................5

7. MANAGEMENT ...............................................................................................5

    7.1.    Operations. ...............................................................................................5

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**8. LITIGATION** ..............................................................................................6

    **8.1. Pre-Petition Litigation.** ..................................................................6

    **8.2. Post-Petition Litigation.** ................................................................6

**9. AFFILITATES AND INSIDERS** ................................................................6

    **9.1. Affiliate 1: Kimberly Mitchell.** ......................................................6

        **9.1.2. Material Connections with the Debtor:** ..............................6

    **9.2. Insider 1: Craig Barnes.** ...............................................................7

        **9.2.2. Material Connections with the Debtor:** ..............................7

**10. PLAN STRUCTURE; ASSETS** ...............................................................8

    **10.1. Primary Structure of the Plan** ....................................................8

    **10.2. Assets.** .......................................................................................9

**11. LIABILITIES** ...........................................................................................9

**12. SUMMARY OF THE PLAN** ...................................................................10

    **A. CLASSIFICATION OF CLAIMS:** ...............................................10

    **12.1. Secured Creditors.** ..................................................................10

        **12.1.1. Classes 1A-1D – Decathlon Alpha III, L.P.** ....................10

    **12.2. Disputed Secured Creditors.** ...................................................11

        **12.2.1. Class 2 – Capital Funding ASAP LLC.** .........................11

        **12.2.2. Class 3 – Queen Funding LLC.** ....................................11

        **12.2.3. Class 4 – Unique Funding Solutions, LLC.** ...................11

    **12.3. Priority Creditors** ....................................................................11

        **12.3.1. Class 5 – Employees.** ..................................................11

        **12.3.2. Class 6 – Internal Revenue Service.** ............................12

        **12.3.3. Class 7 – Oregon Department of Revenue.** .................12

    **12.4. Unsecured Creditors** ...............................................................12

        **12.4.1. Class 8 - Administrative Convenience Class.** ...............12

        **12.4.2. Class 9 - General Unsecured Claims.** ..........................12

        **12.4.3. Class 10 - Unclassified Creditors.** ...............................12

    **B. TREATMENT OF CLAIMS** ........................................................12

    **12.5. Secured Creditors.** ..................................................................13

        **12.5.1. Classes 1A – Decathlon.** .............................................13

        **12.5.2. Class 1B – Decathlon.** .................................................13

        **12.5.3. Class 1C – Decathlon.** .................................................14

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

    12.5.4.   Class 1D – Decathlon. ................................................................14

12.6.    Disputed Secured Creditors...........................................................14

    12.6.1.   Class 2 – Capital Funding ASAP. ...........................................14

    12.6.2.   Class 3 – Queen Funding LLC. ...............................................15

    12.6.3.   Class 4 – Unique Funding Solutions, LLC................................15

12.7.    Priority Creditors. ..........................................................................15

    12.7.1.   Class 5 – Employees. .............................................................15

    12.7.2.   Class 6– Internal Revenue Service..........................................15

    12.7.3.   Class 7 – Oregon Department of Revenue ...............................16

12.8.    Unsecured Creditors. .....................................................................16

    12.8.1.   Class 8 - Administrative Convenience Class. ...........................16

    12.8.2.   Class 9 - General Unsecured Claims........................................17

12.9.    Unclassified Creditors....................................................................17

    12.9.1.   Unclassified - Equity Holders. ................................................17

13. DISPUTED CLAIMS; OBJECTIONS TO CLAIMS ....................................17

14. ADMINISTRATIVE EXPENSES..............................................................18

14.1.    Claims Entitled to Priority Under Section 503(b)(9). ....................18

14.2.    Administrative Claims Not Entitled to Priority Under Section 503(b)(9). .18

15. IMPLEMENTATION ...............................................................................19

15.1.    Termination of Debtor-in-Possession. ...........................................19

15.2.    Effective Date. ...............................................................................19

15.3.    Transfer of Assets. ........................................................................19

15.4.    Funding for Plan Payments............................................................20

15.5.    Avoidance Claims. .........................................................................20

15.6.    Third-Party Claims. ........................................................................21

15.7.    Fees Payable Under 28 U.S.C. §1930. .........................................21

15.8.    Payment of Professional Fees and Expenses After the Effective Date.........22

15.9.    Prepayment. ..................................................................................22

15.10.    Requests for Post-Confirmation Notices.........................................22

15.11.    Attorney Fees.................................................................................22

15.12.    No Interest......................................................................................23

15.13.    Distribution of Reserved Funds for Payment of Professional Fees and Expenses After the Effective Date...................................................................23

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**16. LEASES AND EXECUTORY CONTRACTS** .................................................................24

    **16.1.**    **Leases and Executory Contracts Assumed.** ...................................24

    **16.2.**    **Leases and Executory Contracts Rejected.** ...................................24

**17. RISKS** ........................................................................................................................25

**18. TAX CONSEQUENCES TO DEBTORS** ....................................................................25

**19. DEFAULT** ...................................................................................................................26

**20. MODIFICATION OF PLAN** .......................................................................................27

**21. ALTERNATIVES** ........................................................................................................28

**22. CONFIRMATION OF THE PLAN** ..............................................................................28

    **22.1.**    **Best Interest of Creditors Test** .......................................................28

    **22.2.**    **Fair and Equitable Test.** ...................................................................29

    **22.3.**    **Voting Procedures.** ..........................................................................29

    **22.4.**    **Hearing on Confirmation.** ................................................................30

    **22.5.**    **Effect of Confirmation of the Plan.** ................................................30


**Exhibit 1 – Projected Creditor Distribution Summary**.......................................................3
**Exhibit 2 – Summary and Commentary of Debtor**............................................................4
**Exhibit 3 – Summary and Commentary of Confluence Capital Group** ...........................4
**Exhibit 4 – Debtors' Projected Confirmation Balance Sheet**...........................................5
**Exhibit 5 – Debtors' Liquidation Analysis**......................................................................28
**Exhibit 6 - Income and Expense Projections / Debtor's Assumptions Underlying**
    **Income and Expense Projections**.............................................................................20
**Exhibit 7 – Ballot for Accepting or Rejecting Debtors' Plan**..........................................29

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

# 1. STATEMENT OF POSITION OF OFFICIAL UNSECURED CREDITOR'S COMMITTEE

The Official Unsecured Creditors Committee, consisting of the members described in Article 3 of this Disclosure Statement, with the permission of the Bankruptcy Court, has requested the Debtor to include the following statement of the Committee's position:


THIS SPACE RESERVED FOR STATEMENT FROM COMMITTEE


# 2. INTRODUCTION

On November 4, 2019, Fizz & Bubble, LLC ("Debtor") filed a voluntary petition ("Petition") for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Oregon.

The purpose of this Disclosure Statement is to provide the holders of Claims against Debtor with adequate information about the Debtor and the Plan to make an informed judgment about the merits of approving the Plan. The Disclosure Statement describes the various transactions contemplated under the Plan and includes information about how and when different Claims will be paid. You are encouraged to read the Plan, and if you have questions about its impact on your legal rights you should consult an attorney.

Factual information contained in this Disclosure Statement is the representation of the Debtor only and not of any of Debtor's attorneys, accountants, or other professionals. The information has not been independently investigated by the Court.

The only representations that are authorized by the Debtor concerning the Debtor, the value of its Assets, the extent of its liabilities, or any other facts material to the proposed Plan are the representations contained in this Disclosure Statement. No representations

DEBTOR'S DISCLOSURE STATEMENT (DATED: 07/07/20)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

concerning the Plan or the Debtor other than those set forth in this Disclosure Statement are authorized by the Debtor.  Any representations or inducements concerning the Plan which are other than as contained in this Disclosure Statement should not be relied upon and should be reported to the Debtor for referral to the Bankruptcy Court for appropriate action.  None of the financial information contained in this Disclosure Statement has been subjected to an audit by an independent certified accountant.  The Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy.  However, great effort has been made by the Debtor to ensure that all such information is accurate and fairly presented.

The disclosures made in this Disclosure Statement are for information purposes only, and in the event of a conflict between the language in this Disclosure Statement and the language in the Plan, the language in the Plan shall control.

As the holder of a claim against the Debtor, your vote is important.  The Court may confirm the proposed Plan if it has been accepted by at least two-thirds in total dollar amount and more than one-half in number of the timely received votes of acceptance or rejection by holders of Allowed Claims of each voting class.  In the event that the requisite acceptances are not obtained, the Debtor will request that the Court confirm the Plan, and the Plan may nevertheless be confirmed, if the Court finds that it accords fair and equitable treatment to the class or classes rejecting it.

The Debtor believes that the confirmation of the Plan is in the best interests of the holders of claims.  Accordingly, the Debtor urges that you accept the Plan and that you promptly return your completed ballot so that your vote will be counted.  In order to be tabulated for purposes of satisfying the above requirements, ballots of acceptance must be received at the address on the ballot no later than _____, 2020.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

The total payout to the Creditors holding Unsecured Claims, as shown in **Exhibit 1 – Projected Creditor Distribution Summary** to this Statement, is projected to be approximately $358,000 as specified below, based on the Allowed Claims. Debtor estimates that the percentage distribution to Unsecured Claims will be 3.33% on such claims, unless the holder(s) of such claims accept other treatment. The majority of Unsecured Claims will be paid in a single installment within thirty (30) days of the Effective Date. The Debtor will manage the proceeds from the sale of its Assets and disburse the funds owing to the Creditors under the Plan.

## 3. DEFINITIONS

Definitions of certain terms used in the Plan are set forth on **Exhibit A - Definitions** attached to the Plan. Other terms are defined in the text of the Plan. In either case, when a defined term is used, the first letter of each word in the defined term is capitalized. Terms used and not defined in the Plan shall have the meanings given in the Code or Bankruptcy Rules.

## 4. OFFICIAL UNSECURED CREDITORS COMMITTEE

An Official Unsecured Creditors Committee ("Committee") has been appointed in this case pursuant to Sections 1102(a) and 1102(b) of the Bankruptcy Code. The Committee is comprised as follows:

Oswego Financial Services
Attn: Glenn J. Smith
4091 Coltsfoot Lane
Lake Oswego, OR 97035

Mike Vanier
7650 Beveland Street, Suite 170
Portland, Oregon 97223

Lloyd R. DuBois
0932 SW Palatine Hill Rd.
Portland, Oregon 97219

Express Employment Professionals
Wayne Marschall
7401 SW Washo Court, Suite 200
Tualatin, Oregon 97062

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Bruce Wood
510 SW 5th Ave., Suite 300
Portland, Oregon 97204

Diane M. Humke
32272 Apple Valley Rd
Scappoose, OR 97056

The Committee has retained as its counsel:

Timothy Solomon
LEONARD LAW GROUP
1 SW Columbia Ste 1010
Portland, OR 97204

## 5. DESCRIPTION OF THE DEBTORS

### 5.1. Debtor's Organization.

Debtor is a limited liability company headquartered in Wilsonville, Clackamas County, Oregon. Founded in 2008 as Beau Bain, LLC, Debtor creates, manufactures, and distributes skin softening and rejuvenating skin products for baths, body, shower, and face, with a proprietary 8-Oil Blend that is a natural blend of eight moisturizing oils used in Debtor's products such as soaps, scrubs, lotions, and bubble bath.

### 5.2. Debtor's Business.

A detailed description of the Debtor's historical business and strategic plan was incorporated as part of the report on the Debtor provided by the Court-appointed Examiner, Daniel J. Boverman (the "Examiner's Report"). A complete copy of the Examiner's Report is available from the Bankruptcy Court or may be requested by contacting counsel for the Debtor by e-mail at sara@vbcattorneys.com. Excerpts containing the descriptions of the Debtor's business are attached to this Statement as **Exhibit 2 – Summary and Commentary of Debtor and Exhibit 3 – Summary and Commentary of Confluence Capital Group**.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

## 6. FINANCIAL HISTORY – PRE-PETITION AND POST-PETITION

### 6.1.   Pre-Petition.

For the two calendar years preceding the Petition Date, Debtor's financial statements showed the following:

|  | 2017 | 2018 |
|---|---|---|
| Gross Income: | $16,293,279.73 | $14,428,917.18 |
| Total Cost of Goods Sold | $9,377,239.02 | $9,313,914.24 |
| Gross Profit | $6,916,040.71 | $5,115,002.94 |
| Less Expenses | $7,213,712.19 | $8,354,939.01 |
| Net Income/(Loss) | ($297,671.48) | ($3,239,936.07) |

Complete financial data for these time periods is available for inspection on request and subject to appropriate confidentiality protections for Debtor.

### 6.2.   Post-Petition Operations.

The Debtor has continued to operate its business post-petition.  These operations have, for the most part, been funded by post-petition borrowing from the Debtor's primary secured creditor, Decathlon.  As a result, the sale of the Debtor's Assets and the conversion of certain Claims to securities in the Acquiring Entity provides the necessary funding to permit a distribution to all Classes of Creditors under the Plan.  In the interest of transparency, a projected balance sheet, showing the Acquiring Entity's projected assets and liabilities as of the projected Effective Date is attached to this Disclosure Statement marked **Exhibit 4 – Projected Confirmation Balance Sheet**.

## 7. MANAGEMENT

### 7.1.   Operations.

Debtor manages its own affairs and finances.  Debtor's business has always been run by Kimberly Mitchell and her husband, Craig Barnes.  Kimberly Mitchell is currently involved in the daily operations of the business.  In addition, Debtor is supported by its

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

controller, Kim Rudolph, and its business advisor, Matthew Wilson.  All of the before mentioned have been working for wages or salaries significantly below market rates. Replacing the services provided by those individuals would have significantly diminished Debtor's cash flow.

## 8. LITIGATION

### 8.1.  Pre-Petition Litigation.

Debtor was involved in lawsuits pre-petition which were disclosed on Debtor's Statement of Financial Affairs filed with the Court.

### 8.2.  Post-Petition Litigation.

The Debtor has initiated an adversary proceeding against Kohl's Inc. on account of certain post-petition deliveries of product that remain unpaid for.  As of the date of this Statement, that litigation remains unresolved.

## 9. AFFILITATES AND INSIDERS

The Debtor has the following Affiliates and Insiders:

### 9.1.  Affiliate 1: Kimberly Mitchell.

#### 9.1.1.  Ownership:

Kimberly Mitchell - owns 100% of the membership interests of Debtor.

#### 9.1.2.  Material Connections with the Debtor:

Kimberly Mitchell holds 100% of the membership interest in the Debtor and is a Creditor of the Debtor.

#### 9.1.3.  Debts Owing to or from the *Debtor*:

Kimberly Mitchell has filed a proof of claim asserting a balance owed of $475,000 on an unsecured basis.  As with all Claims, the Debtor has reserved the right to

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

object to this Claim.  Debtor is unaware of any direct debt obligations (aside from potential Avoidance Claims) owed to the Debtor by Kimberly Mitchell.

### 9.1.4.  Guarantees of Debt of the *Debtor*:

The following are debts which Kimberly Mitchell guaranteed for the benefit of Debtor:

| Guaranty Creditor | Amount of Guaranty | Date of Guaranty | Security Interest |
|---|---|---|---|
| Decathlon Alpha III, L.P. | $1,000,000.00 | 09/21/2018 | None |
| Capital Funding ASAP, LLC | $217,125.00 | 09/19/2019 | None |
| Unique Funding Solutions, LLC | $671,428.00 | | None |

## 9.2.    Insider 1: Craig Barnes.

### 9.2.1.  Ownership:

Craig Barnes does not hold a membership interests in the Debtor.

### 9.2.2.  Material Connections with the Debtor:

Craig Barnes is the CEO of the Debtor and is the spouse of Kimberly Mitchell, who holds 100% of the membership interest in the Debtor and is a Creditor of the Debtor.

### 9.2.3.  Debts Owing to or from the *Debtor*:

Craig Barnes has a potential unsecured claim against the Debtor.  As with all Claims, the Debtor has reserved the right to object to this Claim.  Debtor is unaware of any direct debt obligations (aside from potential Avoidance Claims) owed to the Debtor by Craig Barnes.

### 9.2.4.  Guarantees of Debt of the *Debtor*:

The following are debts which Craig Barnes guaranteed for the benefit of Debtor:

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

| Guaranty Creditor | Amount of Guaranty | Date of Guaranty | Security Interest |
|---|---|---|---|
| Decathlon Alpha III, L.P. | $1,000,000.00 | 09/21/2018 | None |
| Capital Funding ASAP, LLC | $217,125.00 | 09/19/2019 | None |
| Unique Funding Solutions, LLC | $671,428.00 | | None |
| Tricor Print Communications, Inc. | $282,143.65 | | None |
| Harsch Investment Properties | $45,000.00 | 09/08/2016 | None |

## 10. PLAN STRUCTURE; ASSETS

### 10.1. Primary Structure of the Plan

The key elements of the Plan are as follows:

1) The Debtor and its professionals have engaged in a process to obtain new investment for the Debtor's business as a means to facilitate a capital infusion to stabilize operations and to fund payment to the Debtor's Creditors. New investment would be made in a newly formed corporation, the Acquiring Entity, which would then issue securities pursuant to the Plan on account of the cash from new investors and in exchange for certain Claims.

2) The Acquiring Entity, once formed and capitalized, would then enter into an asset purchase agreement with the Debtor to acquire the Assets of the Debtor and the bankruptcy estate. The Debtor would then seek Court approval for the sale of the Assets, free and clear of all liens, claims, and interests, which would be noticed to all creditors and include disclosure of the primary terms of the acquisition (purchase price, closing conditions, and any Assets excluded from the purchase). An accompanying disclosure will also include detailed information on the Acquiring Entity,

DEBTOR'S DISCLOSURE STATEMENT (DATED: 07/07/20)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

including the projected classes of securities and the share of such

securities held by various constituencies.

3) Once the sale of the Assets is complete, the Debtor will utilize the sale

proceeds to make payments to Creditors as outlined in the Plan. The Plan

contemplates that the Acquiring Entity will assume the responsibility for

payment over time of certain priority tax obligations that will not be satisfied

from the sale proceeds.

## 10.2. Assets.

As outlined above, the Assets of the Debtor will be transferred to the Acquiring Entity

as part of a purchase agreement. Any Assets excluded from the sale to the Acquiring Entity

shall be deemed abandoned.

## 11. LIABILITIES

Debtor retained the following professionals in connection with Debtor's bankruptcy

case:

a) Vanden Bos & Chapman, LLP: General Counsel for Debtor's Bankruptcy

case. (Estimated fees of $175,000.00 in excess of the pre-petition retainer as

of confirmation.)

b) Geffen, Mesher & Company, P.C. (Estimated fees of $-0- as of

confirmation.)

c) Independent Investment Bankers, Corp and Confluence Capital Group.

(Estimated fees of $50,000.00 as of confirmation.)

The Debtor estimates that the unpaid fees of its professionals through the time of

confirmation of the Plan will be approximately $225,000.00 - $250,000.00 if confirmation is

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

not contested.  If confirmation is contested, the fees of Vanden Bos & Chapman, LLP will be significantly higher.

The fee arrangements approved for Debtor's professionals were their customary hourly rates or commission-based fee structures.  The professionals reserve their rights to request allowance and payment of costs and fees in excess of the above estimates.

## 12. SUMMARY OF THE PLAN

The Plan is not lengthy and should be read in its entirety.  Accordingly, the summary of the Plan here will be kept brief.  The specific treatment of the other Claims of Creditors is set forth below:

**A.  CLASSIFICATION OF CLAIMS:**

**12.1.  Secured Creditors.**

**12.1.1.  Classes 1A-1D – Decathlon Alpha III, L.P.**

Class 1 consists of the Allowed Secured Claims of Creditor 1, each deemed to be a separate subclass as shown below:

| CLASS | CLAIM NO. | CURRENT AMOUNT OWED | COLLATERAL |
|---|---|---|---|
| 1A | 28 | 9,617,648.00* | Revenue Loan and Security Agreement and Amendments thereto secured by UCC 91676432 – Briefly described as:  All present and hereafter acquired property of the Company wherever located and however described and all proceeds thereof, et al. |
| 1B | | $250,000.00* | Debtor-in-Possession Loan and Security Agreement granting a security interest in hypothecates, mortgages, pledges and sets over unto the Lender all right, title, and interest of the Borrower in all of the Collateral. |
| 1C | | $250,000.00* | First Amendment to Debtor-in-Possession Loan and Security Agreement – Same as 1B. |
| 1D | | $300,000.00* | Second Amendment to Debtor-in-Possession Loan and Security Agreement – Same as 1B. |

* plus additional amounts owed to Creditor for interest accrual and amounts owed for attorney fees and costs.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

## 12.2. Disputed Secured Creditors

### 12.2.1.  Class 2 – Capital Funding ASAP LLC.

Class 2 consists of the disputed Secured Claim of Capital Funding ASAP LLC ("Capital Funding ASAP"), (Claim No. 32) for payment of the approximate amount of $593,727.30 secured by UCC 92032769 for collateral described as: Accounts Receivable, Cash, Cash Proceeds, Accounts, Chattel Paper, Equipment, General Intangibles, Inventory, Instruments Related to the Receipts, Instruments Related to the Future Receivables, which the Debtor disputes is secured by any value in such collateral in light of the senior Allowed Secured Claims of Decathlon.

### 12.2.2.  Class 3 – Queen Funding LLC.

Class 3 consists of the disputed Secured Claim of Queen Funding LLC, for payment of the approximate amount of $530,437.00 secured by a promissory note which the Debtor disputes the validity of the asserted secured status.

### 12.2.3.   Class 4 – Unique Funding Solutions, LLC.

Class 11 consists of the disputed Secured Claim of Unique funding Solutions, LLC, for payment of the approximate amount of $717,826.00 secured by agreement which the Debtor disputes the validity of the asserted secured status

## 12.3. Priority Creditors

### 12.3.1.      Class 5 – Employees.

Class 5 consists of allowed employee wage and benefit Claims having priority under 11 U.S.C. § 507(a)(4).

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

### 12.3.2. Class 6 – Internal Revenue Service.

Class 6 consists of the Priority Claims of the Internal Revenue Service ("IRS") (Claim No. 40) entitled to priority under 11 U.S.C. § 507(a)(8) (Claims of governmental units for unpaid taxes).

### 12.3.3. Class 7 – Oregon Department of Revenue.

Class 7 consists of the Priority Claims of the Oregon Department of Revenue ("ODR") (Claim No. 55) entitled to priority under 11 U.S.C. § 507(a)(8) (Claims of governmental units for unpaid taxes).

## 12.4. Unsecured Creditors

### 12.4.1. Class 8 - Administrative Convenience Class.

Class 8 consists of those Creditors holding general Unsecured Claims of $1,000.00 or less, and those Creditors holding Unsecured Claims who elect to reduce their Claims to $1,000.00 or less and elect to have the treatment provided for the Creditors within Class 8.

### 12.4.2. Class 9 - General Unsecured Claims.

Class 9 consists of those Creditors other than those specified in Class 10 below, holding allowed general Unsecured Claims in amounts in excess of $1,000.

### 12.4.3. Class 10 - Unclassified Creditors.

**Unclassified - Equity Holders**. Kimberly Mitchell is the sole equity holder in the case.

## B. TREATMENT OF CLAIMS

Unless otherwise stated, all Classes of Claims are impaired under the Plan and entitled to vote.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Except as otherwise modified by the Plan, all agreements executed between the Debtor and Debtor's Creditors including, but not limited to, contracts, leases, security agreements, UCC financing statements, mortgages, trust deeds and all other documents, shall remain in full force and effect according to their terms.

### 12.5. Secured Creditors.

Unless otherwise stated, any unpaid deficiency after sale, foreclosure or return of a Secured Creditor's Collateral shall be treated as an Unsecured Claim. Unless a Secured Creditor files an itemized Claim (or amends an existing Claim) to assert a deficiency Claim within 60 days after sale, foreclosure or return of its Collateral, any such deficiency Claim shall be deemed waived. A Claim for a deficiency shall be filed with the Court and served upon the Debtor and Debtor's counsel. Unless the Debtor objects to a deficiency Claim within 60 days of service, the deficiency Claim shall be deemed allowed.

Unless otherwise stated, the terms of all agreements between the Debtor and Secured Creditors shall remain the same, excepting that the maturity date of any note shall be extended to a date not less than 5 years from the Effective Date; defaults based on Debtor's insolvency or filing of bankruptcy shall not be enforceable.

#### 12.5.1. Classes 1A – Decathlon.

Decathlon's Allowed Secured Claim within this subclass will be deemed satisfied in full upon issuance of new securities in the Acquiring Entity. The number of shares issued to Decathlon, percentage of ownership, and classes of securities shall be outlined in a separate Motion for Authority to Sell Property Fee and Clear of Liens filed prior to the Effective Date.

#### 12.5.2. Class 1B – Decathlon.

Decathlon's Allowed Secured Claim within this subclass will be deemed

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

satisfied in full upon issuance of new securities in the Acquiring Entity. The number of shares issued to Decathlon, percentage of ownership, and classes of securities shall be outlined in a separate Motion for Authority to Sell Property Fee and Clear of Liens filed prior to the Effective Date.

### 12.5.3. Class 1C – Decathlon.

Decathlon's Allowed Secured Claim within this subclass will be deemed satisfied in full upon issuance of new securities in the Acquiring Entity. The number of shares issued to Decathlon, percentage of ownership, and classes of securities shall be outlined in a separate Motion for Authority to Sell Property Fee and Clear of Liens filed prior to the Effective Date.

### 12.5.4. Class 1D – Decathlon.

Debtor will pay Decathlon's Allowed Secured Claims within this subclass pursuant to the terms of the existing loan documents between the Debtor and Decathlon on or before 90 days after the Effective Date.

## 12.6. Disputed Secured Creditors

### 12.6.1. Class 2 – Capital Funding ASAP.

Class 2 is impaired. The Claim within this Class is a Disputed Claim, as the Debtor has or will file a Motion to Value Collateral and object to the secured status claimed by Capital Funding ASAP. If such motion is granted and objection is sustained, then the Claim in this Class will be treated as a Class 9 Claim. If such motion is denied and objection is overruled, then the Claim in this Class will be treated in the same manner as Class 1A, unless such Creditor consents to treatment as a Class 8 or Class 9 Creditor.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

### 12.6.2. Class 3 – Queen Funding LLC.

Class 3 is impaired. The Claim within this Class is a Disputed Claim, as the Debtor has or will object to the secured status claimed by Queen Funding LLC. If such objection is sustained, then the Claim in this Class will be treated as a Class 9 Claim. If such objection is overruled, then the Claim in this Class will be treated in the same manner as Class 1A, unless such Creditor consents to treatment as a Class 8 or Class 9 Creditor.

### 12.6.3. Class 4 – Unique Funding Solutions, LLC.

Class 4 is impaired. The Claim within this Class is a Disputed Claim, as the Debtor has or will object to the secured status claimed by Unique Funding Solutions, LLC. If such objection is sustained, then the Claim in this Class will be treated as a Class 9 Claim. If such objection is overruled, then the Claim in this Class will be treated in the same manner as Class 1A, unless such Creditor consents to treatment as a Class 8 or Class 9 Creditor.

### 12.7. Priority Creditors.

### 12.7.1. Class 5 – Employees.

Class 5 is unimpaired. Certain Class 5 priority claims for unpaid wages and unpaid health-insurance premiums were paid by the Debtor postpetition in the ordinary course of Debtor's business. All remaining Allowed Class 5 priority claims will be paid in full on or before the Effective Date. Allowed non-priority claims for wages, benefits or vacation shall be paid as Unsecured Claims under Class 9, as applicable.

### 12.7.2. Class 6– Internal Revenue Service.

Class 6 is unimpaired and not entitled to vote. Creditors holding allowed Priority Claims within this Class shall be paid as follows:

(1)     An initial payment on such Allowed Priority Claims within 30 days of the

Effective Date, which the Debtor currently estimates will be in the

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

amount of $350,000.  In the event that such payment is reduced based

on the final purchase price paid for the Assets of the Debtor by the

Acquiring Entity, the initial payment will be reduced accordingly, but in

no event to an amount lower than the payment made on account of

Class 9 Claims.

(2)     On the amount remaining on such Allowed Priority Claims, equal

monthly payments beginning in the month following that in which the

initial payment is made and continuing through October 2024.

Payments shall be due on the tenth day of each calendar month, and

the Acquiring Entity shall specifically assume responsibility for making

such payments to Class 6 upon its acquisition of the Assets of the

Debtor.  Nothing in this Plan shall prevent the Debtor or the Acquiring

Entity from pre-paying amounts due to Class 6 Creditors.

### 12.7.3.          Class 7 – Oregon Department of Revenue

Class 7 is unimpaired and not entitled to vote. Creditors holding Allowed

Priority Claims within this Class shall be paid in full on the later of (a) the Effective Date or

(b) the Allowance Date, unless such holder shall agree, or has agreed, in writing to a

different treatment of such Claim(s).

### 12.8.  Unsecured Creditors.

### 12.8.1.          Class 8 - Administrative Convenience Class.

Class 8 is impaired.  Class 8 consists of Allowed Unsecured Claims which are

equal to or less than $1,000.00.  Each holder of a Claim in such class shall receive cash in

an amount equal to 25 percent of the allowed amount of such Claim, without interest, within

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

thirty (30) days following the Effective Date.  Any Creditor holding an Unsecured Claim in excess of $1,000.00 may "opt in" to Class 8 by marking a special "opt in" election on the ballot for voting for or against this Plan.  Creditors holding Claims in excess of $1,000.00 who elect to "opt-in" to Class 8 shall agree to reduce their Claims to $1,000.00 and to consent to the treatment of their reduced Claim as called for within Class 8, and thereby be excluded from treatment as a Class 9 Creditor.

### 12.8.2.      Class 9 - General Unsecured Claims.

Class 9 is impaired.  The Creditors within Class 9 shall be collectively paid an amount equal to the initial payment to be made to Class 6 Creditors within thirty (30) days following the Effective Date, which shall be divided pro rata among the Claims within Class 9 based on the amount of each Claim within Class 9.  As shown on **Exhibit 1** attached to this Statement, Debtor projects that approximately $350,000.00 will be distributed to the Class 9 Claims, which would result in a distribution of approximately 3% to each Class 9 Claimant.

### 12.9.  Unclassified Creditors.

### 12.9.1.    Unclassified - Equity Holders.

**Unclassified** - Equity Holders.  Kimberly Mitchell is the sole equity holder in the case.  The membership interests and interests of all Equity Holders in the Debtor shall be deemed extinguished without further action by the Debtor upon the Effective Date.

## 13. DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

Only Claims that are Allowed Claims and not subject to an action described in 11 U.S.C. § 502(d) shall be entitled to distributions under the Plan.  Debtor reserves the right to contest and object to any Claims and previously scheduled amounts, including, without limitation, those Claims and scheduled amounts that are specifically referenced herein, are

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

not listed in the Schedules, are listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a different amount than the Debtor or Liquidating Trust believes is validly due and owing. Unless otherwise ordered by the Bankruptcy Court, all objections to Claims and scheduled amounts (other than Administrative Expense Claims) shall be Filed and served upon counsel for Debtor and the holder of the Claim objected to in the time prescribed by Section 19.12 of this Plan. The last day for filing Administrative Expense Claims and objections thereto shall be set pursuant to an order of the Bankruptcy Court. All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a) Debtor may otherwise elect consistent with the Plan and the Bankruptcy Code or (b) the Bankruptcy Court may otherwise order.

## 14. ADMINISTRATIVE EXPENSES

### 14.1. Claims Entitled to Priority Under Section 503(b)(9).

Unless otherwise agreed, Claims within Section 503(b)(9) of the Bankruptcy Code, which are entitled to treatment as Administrative Claims, and not already paid pre-confirmation based on a Court Order, shall be paid in full within 30 days following the Effective Date without interest.

### 14.2. Administrative Claims Not Entitled to Priority Under Section 503(b)(9).

All allowed Administrative Claims which are not entitled to priority pursuant to §503(b)(9) of the Code shall be paid in full, unless otherwise agreed in writing by the holder of such Claim or ordered by the Court, on or before the Effective Date of the Plan, or within ten (10) days of entry of a Court order approving an application for allowance of an Administrative Claim, whichever is the later. Any party who asserts an Administrative Claim against the Debtor shall file such Claim within thirty (30) days of the Effective Date or the right to such Claim shall be barred.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Debtor has not requested, nor does Debtor expect to request, installment payment arrangements from any Administrative Claimant, but reserves the right to do so if necessary or appropriate. Notice of the terms of any proposed installment payment schedule will be disclosed to the Court in the final fee application of any Administrative Claimant who will be paid on an installment basis.

## 15. IMPLEMENTATION

### 15.1.    Termination of Debtor-in-Possession.

On the Effective Date, the Debtor's status as Debtor-in-Possession shall terminate, and the Assets of the Debtor shall be transferred to the Acquiring Entity pursuant to the terms of an approved purchase agreement.

### 15.2.    Effective Date.

The Effective Date of the Plan means the thirtieth (30th) day after the date on which the order confirming the Plan is entered by the Clerk of the Bankruptcy Court, provided there is no stay of such order then in effect; or if a stay is then in effect, then the date on which the order confirming the Plan becomes a Final Order.

### 15.3.   Transfer of Assets.

On or before the Effective Date, the Assets of the Debtor shall be transferred to the Acquiring Entity, and all property of the bankruptcy estate, free and clear of all claims, liens, charges or other interests of Creditors arising prior to the entry of the order confirming the Plan except for liens upon property securing Claims provided for in the Plan. The terms of such transfer shall be separately noticed in a Motion for Authority to Sell Property Free and Clear of Liens. Except as provided in such Motion, the property of the Debtor and/or the property of the bankruptcy estate which will vest in the Debtor on the Effective Date includes, but is not limited to, all Third-Party Claims, Avoidance Claims, and respective tax

Debtor has not requested, nor does Debtor expect to request, installment payment arrangements from any Administrative Claimant, but reserves the right to do so if necessary or appropriate. Notice of the terms of any proposed installment payment schedule will be disclosed to the Court in the final fee application of any Administrative Claimant who will be paid on an installment basis.

## 15. IMPLEMENTATION

### 15.1.    Termination of Debtor-in-Possession.

On the Effective Date, the Debtor's status as Debtor-in-Possession shall terminate, and the Assets of the Debtor shall be transferred to the Acquiring Entity pursuant to the terms of an approved purchase agreement.

### 15.2.    Effective Date.

The Effective Date of the Plan means the thirtieth (30th) day after the date on which the order confirming the Plan is entered by the Clerk of the Bankruptcy Court, provided there is no stay of such order then in effect; or if a stay is then in effect, then the date on which the order confirming the Plan becomes a Final Order.

### 15.3.   Transfer of Assets.

On or before the Effective Date, the Assets of the Debtor shall be transferred to the Acquiring Entity, and all property of the bankruptcy estate, free and clear of all claims, liens, charges or other interests of Creditors arising prior to the entry of the order confirming the Plan except for liens upon property securing Claims provided for in the Plan. The terms of such transfer shall be separately noticed in a Motion for Authority to Sell Property Free and Clear of Liens. Except as provided in such Motion, the property of the Debtor and/or the property of the bankruptcy estate which will vest in the Debtor on the Effective Date includes, but is not limited to, all Third-Party Claims, Avoidance Claims, and respective tax

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

attributes including, but not limited to, ordinary loss carry forwards and capital loss carry forwards as defined and allowed under the Internal Revenue Code and the laws of the State of Oregon that the Debtor or the bankruptcy estate were entitled to claim pre-petition, or that arose post-petition.

### 15.4.    Funding for Plan Payments.

The payments due under the Plan will be funded by (1) proceeds from the sale of all of the Assets to the Acquiring Entity and (2) as to future payment of the assumed liability to Class 6 Creditors, the post-transfer revenue generated by the Acquiring Entity.  The Debtor's projections for income during the life of the Plan, and the assumptions underlying those projections are attached as **Exhibit 6 - Income and Expense Projections / Debtor's Assumptions Underlying Income and Expense Projections** to Debtor's Disclosure Statement.  In summary, Debtor proposes to fund the payments called for by this Plan from Debtor's post-petition operations, together with proceeds from property surrendered or liquidated pre-confirmation.

### 15.5.    Avoidance Claims.

Avoidance Claims, if any, are retained pending transfer of such Avoidance Claims to the Acquiring Entity, as outlined above.  In the event the Acquiring Entity does not elect to acquire an Avoidance Claim or any Avoidance Claims, the Debtor may retain and pursue such claims or may elect to assign such claims to the Committee to pursue for the benefit of Class 9 Claims.  Any holder of a Claim against the Debtor shall automatically have such Claim disallowed without further action by the Debtor or order of this Court if the holder of a Claim fails to repay the Debtor or, after transfer of the Avoidance Claim(s), the Acquiring Entity any sum that may be recoverable by the Debtor under Bankruptcy Code §§ 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550 or 724(a) within ten (10) days of a final

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

judgment in the Debtor's or Acquiring Entity's favor against such Claim holder, unless such Creditor has posted a supersedeas bond for the entire amount of the Debtor's or the Acquiring Entity's judgment.

### 15.6. Third-Party Claims.

All Third-Party Claims are preserved pending transfer of such Third-Party Claims to the Acquiring Entity, as outlined above. Debtor is not aware of any Third-Party Claims, outside of the claims identified on **Exhibit A** attached to the Plan.  In the event any additional Third-Party Claims are discovered, Debtor or the Acquiring Entity shall provide notice describing such Third-Party Claims along with a statement regarding the Debtor's or Acquiring Entity's intent to pursue or abandon the Claim.  In addition, the Debtor or the Acquiring Entity, with notice, may abandon a Third-Party Claim at any time.

### 15.7. Fees Payable Under 28 U.S.C. §1930.

All fees payable under 28 U.S.C. §1930, as determined by the Court, shall be paid on or before the Effective Date.  All post-petition fees payable under 28 U.S.C. §1930 shall be paid when due.  Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6) until the case is closed, converted, or dismissed.  After confirmation, the Debtor shall file with the Court a monthly financial report for each month, or portion thereof, that the case remains open.  The monthly financial report shall include a statement of all disbursements made during the course of the month, whether or not pursuant to the Plan.

The Debtor shall be responsible for timely payment of U.S. Trustee fees incurred pursuant to 28 USC § 1930(a)(6) until the case is closed, converted or dismissed (including payment of any such fees incurred in any partial quarter during which this case is closed, converted or dismissed).  After confirmation, the Reorganized Debtor shall file with the Court

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

a monthly financial report for each month, or portion thereof, that the case remains open and/or is reopened at any time. The monthly financial report shall include a statement of all disbursements made during the course of the month, whether or not pursuant to the Plan. All U.S. Trustee fees, including any such fees accrued in any partial quarter, shall be paid as a condition precedent prior to case closure.

In addition, notwithstanding Section 14.9 of the Disclosure Statement and Section 7.9 of the Plan, the U.S. Trustee shall be entitled to interest, fines and penalties on any past due U.S. Trustee fees.

### 15.8.    Payment of Professional Fees and Expenses After the Effective Date.

Any professional person employed by the Debtor after the Effective Date shall be paid by the Debtor upon submission to the Designated Parties of a detailed billing statement setting forth the amount of compensation or reimbursement, or both, sought. If none of the Designated Parties objects to a bill on or before a date that is ten (10) business days after it is served, the Debtor may pay such fees and expenses in the amount requested without further Court approval or Order. If a timely objection is made and is not withdrawn, any dispute shall be submitted to the Bankruptcy Court for resolution.

### 15.9.    Prepayment.

Debtor may pre-pay any amounts due to any Creditor or Class of Creditors prior to the due dates set in the Plan without penalty and without prior notice or Court approval.

### 15.10.    Requests for Post-Confirmation Notices.

This Section Intentionally Deleted.

### 15.11.    Attorney Fees.

Any creditor, including secured and Creditors holding unsecured claims, claiming a right to payment of attorney fees, including expenses, must follow the procedure provided in

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Local Bankruptcy Rule 2016-1(h), which requires the filing of a proof of claim (or the amendment of a filed proof of claim) for payment of prepetition attorneys fees and for the payment of post-petition, preconfirmation attorneys fees. **The deadline to file a claim related to the payment of post-petition, preconfirmation attorneys fees is 28 days after entry of the Confirmation Order**. No attorneys fees shall be paid with respect to any Claim except as specified in the Plan or allowed by a Final Order of Bankruptcy Court.

### 15.12. No Interest.

Except as expressly stated in the Plan or otherwise allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be allowed on any Claim, and the Debtor shall be entitled to offset the distribution to any Creditor who has received payment for post-petition, interest, penalties or late charges not approved by the Court.

### 15.13. Distribution of Reserved Funds for Payment of Professional Fees and Expenses After the Effective Date.

Any professional person employed by the Debtor after the Effective Date shall be paid by the Debtor upon submission to the Designated Parties of a detailed billing statement setting forth the amount of compensation or reimbursement, or both, sought. If none of the Designated Parties objects to a bill on or before a date that is ten (10) business days after it is served, the Debtor may pay such fees and expenses in the amount requested without further Court approval or Order. If a timely objection is made and is not withdrawn, any dispute shall be submitted to the Bankruptcy Court for resolution.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

# 16. LEASES AND EXECUTORY CONTRACTS

## 16.1.   Leases and Executory Contracts Assumed.

Effective on and as of the Effective Date, each executory contract and unexpired lease that exist between Debtor and any other party, with respect to which the Debtor has filed a motion in this case for authority to assume and/or that is listed on **Exhibit B – Debtor's Contracts / Lease Agreements – Assumed and/or Rejected** attached to the Plan, is hereby expressly assumed, except for any executory contracts and unexpired leases that have been rejected by the Debtor with the approval of the Court on or before the Effective Date or with respect to which a motion for rejection has been filed on or before the Confirmation.

## 16.2.     Leases and Executory Contracts Rejected.

Without admitting the existence of, or validity of, any other executory contract or unexpired lease, all executory contracts or unexpired leases with respect to which Debtor has not filed a motion seeking authority to assume or which are not expressly assumed in the Plan shall be rejected on the Effective Date.  Rejected executory contracts include, but are not limited to: (a) Debtor's lease with Harsch Investment Properties, LLC previously rejected under the Amended Order Re: Debtor's First Amended Motion to Reject Nonresidential Real Property Lease (Doc No. 313) and (b) Debtor's lease with Tualatin Industrial Ventures, LLC previously rejected under the Stipulated Order Authorizing Debtor to Reject Non-Residential Real Property Lease (Doc No. 284).  Any Claims for damages arising by reason of the rejection of any executory contract or unexpired lease will be disallowed and the holder thereof barred from receiving distributions under the Plan unless a Proof of Claim for such damages on account of rejection is filed with the Court within thirty days after the Effective Date.  Any Claims based upon rejection of a lease for real property

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

shall be limited to the amount set forth in 11 U.S.C. §502(b)(6).  Lease Rejection Claims

shall be treated as general Unsecured Claims under Class 15 or 16, whichever is applicable

to the amount of such Lease Rejection Claim.

## 17. RISKS

Risks to successful performance of the Plan include the risk that the market for

Debtor's product may decline rather than hold steady or improve as Debtor expects.  The

credit and investment markets may take longer to recover than expected.  If the credit

markets have not recovered, it may be more difficult for Debtor to secure sufficient

investment in the Acquiring Entity, which could eliminate the ability to complete a sale of the

Assets as a going concern.  In a liquidation sale, there is substantial risk that there would be

insufficient assets beyond the Collateral for Secured Claims to make any distribution to

Unsecured Claims.  As an operating manufacturing business, Debtor bears risks of non-

payment as a supplier to its retail customers.  Other risks to successful performance of the

Plan are that the income and expense projections may prove erroneous.  Debtor believes its

income and expense projections contain a reasonable margin of error such that minor

variations from the projections should not jeopardize the chances of success of the Plan.

## 18. TAX CONSEQUENCES TO DEBTORS

If the Debtor fails to make any payment of any tax, or any Plan payments to any

governmental unit (including, but not limited to, the Internal Revenue Service or the Oregon

Department of Revenue) within 10 days of the due date, including accruing employment tax

deposits, or if the Debtor fails to file a federal tax or state return by the due date, then the

relevant governmental unit my declare that the Debtor is in default of the Plan.  This benefits

and obligations of this paragraph shall inure to the benefit of the Acquiring Entity upon

assumption of Plan payments due to any governmental unit.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Declaration of the default is to be mailed, in writing to the Debtor/Debtor's counsel.

The Debtor shall be given 30 days to cure the default by paying all past due amounts, and

filing/paying all past due tax returns to:

IRS – Insolvency                          Oregon Department of Revenue
M/S O240                                  PO Box 14725
1120 SW Third Ave. Ste. G-044            Salem, OR  97309-5018
Portland, OR 9704-2871

Any and all Notices of Federal Tax Liens (NFTL) in favor of the United States under

26 U.S.C. 6321, as well as any NFTL's filed pursuant to 26 U.S.C. 6323 or any and all tax

liens in favor of other governmental units, shall remain in effect against all property or rights

to property of the Debtor and of the estate, until all taxes provided for in the Plan are paid in

full or otherwise satisfied.

## 19. DEFAULT

Except as otherwise specifically provided in the Plan, in the event Debtor shall default

in the performance of any of their obligations under the Plan, then a claimant may pursue

such remedies as are available at law or in equity.  An event of default occurring with

respect to one Claim shall not be an event of default with respect to any other Claim.

Nothing contained in the Plan shall limit the right of any party to reopen this case or to

convert this case to a liquidation case under Chapter 7 of the Bankruptcy Code if cause for

such relief exists.

Debtor shall be entitled to written notice of any claimed default under the Plan, and

shall have twenty (20) days opportunity to cure.  If such claimed default is cured within the

twenty (20) days cure period, then such Creditor shall not be entitled to enforce any

remedies which would otherwise be available on account of such default.  If Debtor fails to

cure within the twenty (20) days cure period, then such Creditor may seek such remedies as

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

are granted by law to enforce its rights arising under and pursuant to the Plan, including seeking an order to compel such performance. The default and cure provisions contained in the Plan shall supersede any provisions concerning default and cure contained in any other agreement between Debtor and any Creditor affected by the Plan.

Notice of default shall be effective when served simultaneously via fax at the number shown below and mailed to both the Debtor and to the Debtor's attorney, if any, postage prepaid, at the following addresses:

| | |
|---|---|
| **Debtor**: | Fizz & Bubble, LLC |
| | Kimberly A. Mitchell |
| | 27120 SW 95th Ave., Ste. 3280 |
| | Wilsonville, OR 97070 |
| **Debtor's Attorney**: | Douglas R. Ricks |
| | VANDEN BOS & CHAPMAN, LLP |
| | 319 SW Washington, Suite 520 |
| | Portland, OR 97204 |
| | Telephone: (503) 241-4869 |
| | Fax: (503) 241-3731 |

## 20. MODIFICATION OF PLAN

The Debtor may, upon compliance with requirements of 11 U.S.C. §1127, propose amendments or modifications to the Plan at any time prior to confirmation with the permission of the Court and upon notice to affected Creditors. If Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceeding involving the Debtor. After confirmation, Debtor may, with the approval of the Court, and so long as Debtor does not materially or adversely affect the interest of Creditors, remedy any defects, omissions or

reconcile any inconsistencies in the Plan in whatever way is necessary to carry out the purposes of the Plan.

## 21. ALTERNATIVES

Alternatives to the Plan include adoption of a different Plan, dismissal of the case, or conversion of the case to a case under Chapter 7.  If the case is dismissed, Creditors may assert and enforce their Claims against Debtor by any method allowed by law.  Secured Creditors may foreclose their security interests and Creditors may obtain judgments and levy execution on unencumbered Assets.  If this case is converted to a Chapter 7 case, a Trustee will be appointed to liquidate Debtor's Assets for the benefit of the estate.  As stated above, it is estimated that in a Chapter 7 liquidation the Unsecured Claims would likely receive little, if any, distribution.  Given the amount of claims with higher priority (Administrative Claims and Priority Claims), it is highly unlikely that those claims would be paid in full in a liquidation.

## 22. CONFIRMATION OF THE PLAN

### 22.1.    Best Interest of Creditors Test.

Debtor believes that Creditors holding unsecured claims will receive under the Plan, on account of their Claims, property having a value, as of the date of confirmation of the Plan, that is equal to or in excess of the amount that such Creditors would receive if Debtor's Assets were liquidated under a Chapter 7 case.  This is commonly referred to as the "Best Interest of Creditors" standard.  **Exhibit 5 – Debtors' Liquidation Analysis** is attached to this Disclosure Statement.  As shown on **Exhibit 5**, Creditors holding unsecured claims would receive a total of $-0- in a Chapter 7 case.  By comparison, as shown on **Exhibit 1**, Debtor's Plan provides payment to Creditors holding unsecured claims of $357,733 via a sale of the Debtor's Assets as a going concern.  Based on the foregoing,

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Debtor asserts that this meets or exceeds the value as of the Effective Date that would be paid to Creditors holding unsecured claims in a Chapter 7 case.

### 22.2.    Fair and Equitable Test.

The Court may confirm the Plan upon finding that the Plan is fair and equitable under the provisions of 11 U.S.C. §1129(b).  Debtor believes that the Plan proposed is fair and equitable and satisfies the requirements of 11 U.S.C. §1129(b).  Debtor will seek confirmation of the Plan, even if the Plan is not accepted by all classes of Creditors.

### 22.3.    Voting Procedures.

A ballot for voting for the acceptance or rejection of the Plan is attached as the last Exhibit (**Exhibit 7 – Ballot for Accepting or Rejecting Debtors' Plan**) to this Disclosure Statement and should be removed and used for voting on the Plan.  Holders of Claims and interests should carefully read the instructions contained on the ballot and complete, date, and sign the ballot and transmit it to the address indicated on the ballot.  In order for a holder's vote to be tabulated, the holder's ballot must be received at the address indicated on the ballot not later than date set forth in the Order accompanying this Disclosure Statement.

Ballots may be filed by fax at (503) 241-3731 so long as the Ballot containing the original signature of the Creditor is returned by mail postmarked on or before the deadline date for voting.  Failure to vote or a vote to reject the Plan will not affect a Creditor's Claim if the Plan is ultimately confirmed.

A class of Claims will have accepted the Plan if the Plan is accepted by Creditors holding at least two-thirds in total dollar amount and more than one-half in number of the Allowed Claims of such class voting on the Plan.  A Class of Interests will have accepted the Plan if voting members of that class holding at least two-thirds in amount of

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

the allowed interests voting, have voted for the Plan.  All of the foregoing percentage requirements are determined entirely from those Creditors or interests that actually vote.   If a Class of Claims is not impaired, it is deemed to accept the Plan.

**22.4.    Hearing on Confirmation.**

The hearing on confirmation of the Plan has been set for _____, 2020 at __:__ ___.**m.** before the Honorable Trish M. Brown, United States Bankruptcy Judge, Courtroom No. 4, United States Bankruptcy Court, 1050 SW Sixth Avenue, Suite 700, Portland, Oregon 97204.  The Bankruptcy Court will confirm the Plan at the hearing only if the relevant requirements set forth in 11 U.S.C. §1129 are satisfied.

Objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for Debtor on or before the deadline specified in the Order accompanying this Disclosure Statement.  Counsel for Debtor on whom objections must be served is Douglas R. Ricks, Vanden Bos & Chapman, LLP, 319 SW Washington, Suite 520, Portland, Oregon 97204-2620.

**22.5.  Effect of Confirmation of the Plan.**

Confirmation of the Plan shall have the effect provided in 11 U.S.C. §1141.

Dated:  <u>July 7, 2020</u>

Respectfully submitted;

FIZZ & BUBBLE, LLC

By: <u> /s/Kimberly Mitchell</u>
    Kimberly Mitchell, Member
    Debtor-in-Possession

**PRESENTED BY**:

By:<u>/s/Douglas R. Ricks</u>
    Douglas R. Ricks, OSB 044026
    VANDEN BOS & CHAPMAN, LLP
    319 SW Washington, Suite 520
    Portland, OR  97204
    Telephone: (503) 241-4869

Of Attorneys for Debtor-in-Possession

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869



**EXHIBIT 1**

EXHIBIT 1
FIZZ & BUBBLE, LLC
19-34092-tmb11

CONFIRMATION DISTRIBUTION SUMMARY

| | Influx | Total Claims | Distributions | | Running Cash Balance | Post Confirmation Claims | |
|---|---|---|---|---|---|---|---|
| Beginning Cash | | | | | $ - | | |
| New Investment/Purchase Price | $ 3,000,000 | | | | $ 3,000,000 | | |
| Retained Capital | $(1,058,681.00) | | $ - | | $ 1,941,319 | | |
| **Secured Claims:** | | | | | | | |
| Decathalon | | $ 9,617,648 | | [1] | $ 1,941,319 | $ - | |
| **Administrative Claims** | | | | | | | |
| Professionals | | $ 300,000 | $ 300,000 | | $ 1,641,319 | $ - | |
| Post-Petition Lease | | $ 200,000 | $ 200,000 | | $ 1,441,319 | $ - | |
| Post-Petition Taxes | | $ 121,379 | $ 121,379 | | $ 1,319,940 | $ - | |
| Post-Petition DIP Funding | | $ 800,000 | $ 300,000 | [2] | $ 1,019,940 | $ - | |
| **Priority Claims** | | | | | | | |
| Wages | | $ 161,841 | $ 161,841 | | $ 858,099 | $ - | |
| Taxes - IRS | | $ 954,781 | $ 350,000 | | $ 508,099 | $ 604,781 | [3] |
| Taxes -ODR | | $ 110,839 | $ 110,839 | | $ 397,260 | $ - | |
| **Unsecured Claims** | | | | | | | |
| Admin Convenience | | $ 31,092 | $ 7,773 | [4] | $ 389,487 | | |
| General Unsecured | | $ 10,530,941 | $ 350,000 | | $ 39,487 | | |
| **Post Confirmation** | | | | | | | |
| Reserve | | | $ 39,487 | | $ - | | |

[1] Assumes a conversion of Decathlon's claim in its entirety to securities in a newly formed corporation to which all the Debtor's assets would be transferred. 11 U.S.C. §§ 1123(a)(5)(B), (J).

[2] Assumes (a) no further DIP financing will be required pre-confirmation and (b) that $500,000 of Decathlon's DIP loan would be converted to securities in the same manner as outlined in footnote 1.

[3] Remainder of tax claims entitled to priority under 11 U.S.C. § 507(a)(8) would be paid over 5 years as required under 11 U.S.C. § 1129(a)(9)(C)(ii). Assuming monthly payments beginning in September 2020, such payments would be in the amount of $12,914.67 over a period of 51 months at 4% interest.

[4] Assumes payment of 25% of claims less than $1,000.00

EXHIBIT 1
Page 1 of 1

**EXHIBIT 2**


<u>Fizz & Bubble – Background & Go Forward Traction Binder</u>

**2015-2017 Trends & Results:**

From 2015-2018, Fizz & Bubble's brand has been successfully positioned as the premier home spa & beauty products line, while significant opportunity still exists in untapped omni-channel distribution and brand marketing. The validation of the products in market has been achieved with high sell through at major retailers, with the products being sold in over 10,000 doors in North America.

As the company's products began to accelerate in sales, Ulta Beauty utilized Fizz & Bubble a significant brand to launch the new bath fizzies category. Fizz & Bubble's bright branding and high quality products performed very well after the initial orders with Ulta, and soon several major retailers were calling in 2016 and 2017 to carry the company's lines. As F&B's sales increased considerably through 2015, 2016, and 2017 at a rate of over 325% per year. Product sell through and popularity within customers' stores fueled this growth, with limited investment by Fizz & Bubble in media marketing. Orders for 2018 were showing to be again at a significant level of growth over 2017, and the company had self-funded this rapid growth with only a basic factoring credit facility. The organization's biggest historical impediment has been the lack of consistent capital access, which hindered critical items such as marketing spend, ecommerce development, and the working capital cycle.

**2017 → 2018 Narrative:**

In Summer 2018, F&B engaged an Asset-Based Lending/PO Financing facility to keep up with growing orders/demand and the coming holiday season. Unfortunately, the ABL/PO Financer ended up being unprofessional, inept, and inadequate.

As the time came for the ABL/PO financing utilization to ramp up in July and August, issues arose with the facility provider's ability to fund production costs. The difficulties on funding were stemming primarily from the ABL/PO Financer's own inability to understand the sector and likely their own limited capitalization. Although management clearly laid out expected orders and capital needs prior to closing the credit facility with the provider, it was apparent that the capital need was beyond the provider's ability to fund. The provider did not make clear their limitations at any time prior to F&B's requests for funding advances.

The company then secured subordinated growth financing from a PE Fund in late Q3 2018 - which allowed the company to ship some of the significant orders for the fall and Holiday season.

Both Fizz & Bubble's management and the newly involved PE Fund were advised by the ABL/PO Financer that requests for advances would be met in line with their existing agreement upon closing of the new financing.

Shortly after the subordinated financing closed, F&B was notified by the ABL/PO Financer that they were unable to fund any advances going forward, which was a clear deviation from their indications to multiple parties only days prior.

Investment Banking Services & Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC. Confluence Capital Group, Inc. is not affiliated with Independent Investment Bankers Corp. One World Trade Center, 121 Salmon St., Suite 1100, Portland OR 97204



**EXHIBIT 2- Page 1 of 3**




The result of the capital constraints and disruption to production, which derived primarily from an undercapitalized senior ABL/PO lender, greatly impacted F&B's 2018 business. Orders were not taken on occasion and, in some cases, limited to focus production resources on maintaining high margin and/or sizable relationships.

Also, production runs were rushed, forcing a series of costs overruns from overtime labor, limited volume order supplies, and rush shipping for both inbound supplies and outbound finished goods. Thus, revenues in 2018 show a dip due to the triage nature of orders/production, and margins were skewed downward due to circumstantial cost overruns. Management firmly believes that had the ABL/PO financing facility performed in line with expectations and agreements, that margins would have likely improved over that of 2017, and revenues would have been in line with the $30 Million for 2018.

**2018 → 2019 Narrative:**

The issues from the ABL/PO Financer had reverberating effects well into 2019. The firm dissolved the relationship with the ABL/PO Financer and brought on a new ABL provider – who like the previous ABL/PO Financer, made overtures that orders and working capital requests would be funded as needed, however – as push came to shove, the new ABL/PO Financer proved to be less than an ideal partner. After onboarding them in Jan. 2019, F&B exited the relationship in May 2019. This again caused short ships, late orders, canceled orders, relationships to cease, etc.

The subordinated growth financing from the PE Fund were used for working capital and as a substitute to the two ABL providers who failed to deliver. The PE Fund's financing was intended for growth capital and expansion (i.e. eCommerce Channel Development, New product Lines, New Distribution Partnerships) however because of the first ABL/PO Financer in particular, funds were used to fill orders, etc.

In Late Q1, Early Q2 2019 – F&B determined a majority or total sale to an aligned PE group would be the best path forward as the lack of access to working capital was continuing to hinder the company. Confluence Capital was engaged to go to market and had a wide swath of PE funds interested in investment – including numerous term sheets and two I.o.I's

Fizz & Bubble's Financial Planning & Analysis Department and capabilities were built in tandem with extraordinary growth. As this growth was achieved and the enterprise scaled – so did its complexity. Resources were constrained, including HR/talent – which resulted in key employees wearing many hats. This caused the turnover of critical financial information to the interested PE Funds to be slow and the visibility into key performance metrics to be opaque. Unfortunately, the delay in providing the requested due diligence items curbed interest from the PE groups as they many deals in their pipeline and operate on tight timelines. The I.o.I's were ultimately pulled for this reason – which occurred in late Q3, early Q4-2019.

With the PE process killed – the company had to rely on onerous short-term financing (market place lenders) – and similar to 2018, had to turn away orders or short shipped orders, rush order materials etc. This in turn led to the company initiating the Chapter 11 bankruptcy process.

Investment Banking Services & Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC. Confluence Capital Group, Inc. is not affiliated with Independent Investment Bankers Corp. One World Trade Center, 121 Salmon St., Suite 1100, Portland OR 97204



EXHIBIT 2- Page  2 of 3



-**Delivering Capital for Growth®**

**2020 & Beyond – Going Forward:**

The Chapter 11 bankruptcy is underway. With the COVID-19 pandemic entering the fold – Fizz & Bubble added a hand sanitizer product line that had immediate traction with regional customers. The PE fund that provided subordinated growth financing in late 2018, provided an additional $250K to support the procurement of supplies (e.g. plastic bottles) & raw materials to fulfill orders. Further the F&B is currently closing a DIP financing facility with a West Coast Based Specialty Lender to provide liquidity from their receivables and, eventually/potentially, inventory as the relationship seasons. In conjunction with credit parties – Confluence Capital Group has been in market with the deal for equity investment. COVID-19 caused Private Equity & Venture Capital deal processes to come to a screeching halt across all industries, investment thesis, stages (angel to large middle market transactions) – as investor committees either wanted to re-focus/support their on current portfolio companies, or simply wait to see what the world looked like as the dust settled. Further, the US Trustee recommended that the Ch. 11 BK process be converted to a Ch. 7 BK liquidation. Upon conversion being considered, F&B's various creditors, relevant counsel's, F&B management, other parties with vested interests spent several weeks, via numerous virtual court hearings, advocating to the court that the best path forward for all involved is to continue down the Ch. 11 pathway. The conversion motion froze the closing of the DIP financing facility – as they needed clarity/visibility on what was going on – caused the equity discussions to pause. On April 9, 2020 – the Ch. 7 BK conversion motion was dismissed by Judge Brown.

With these significant roadblocks abated – the process continued forward. CCG re-engaged the equity market making process. Many PE groups & VC's are hungry for deal flow, as it has essentially dried up. The majority of these interested parties operate under traditional fund structures – meaning they have dry powder in their coffers that needs to get deployed asap, as they are required to return the capital within 7 to 10 years to their LPs. Also, strategic investors completely pulled back corporate development efforts.

That said – CCG has approximately 20 capital providers interested in an equity investment, at various stages of underwriting/interest. The current "work from home" dynamic has slowed typical turnaround times for some groups, as hiccups are still being ironed out. Further, with the US officially being in a recession, and consumer buying habits adjusting to the new Covid-19 reality – forecasting financials has been difficult for the company as numerous revisions had to be made, to adjust for the dynamic market & broader macro economy. Forecasted financials are a critical item for investor groups when evaluating a deal. Out of the 20 groups – several into the data room, with meetings & initial terms being scheduled and contemplated. Regarding estimated timing of an equity round potentially closing, end of July '20/early August '20 is possible. While CCG cannot and will not make any assurances that an investment round will ultimately close, as CCG is engaged with Fizz & Bubble on a "Best Efforts" basis. That said – from the communications had to date, there is demonstrated appetite for an equity investment. As material progress & developments occur, CCG will keep all relevant parties apprised.

Investment Banking Services & Securities offered through Independent Investment Bankers Corp. a broker-dealer, Member FINRA/SIPC. Confluence Capital Group, Inc. is not affiliated with Independent Investment Bankers Corp. One World Trade Center, 121 Salmon St., Suite 1100, Portland OR 97204



EXHIBIT 2- Page 3 of 3

**EXHIBIT 3**

**Fizz & Bubble 2020 – CONFIDENTIAL Summary & Commentary (06.09.2020 Revision)**

In response to inquiries and questions from the court appointed examiner, enclosed are responses and various insights (including active real-time adjustments), that should give a high-level view on several topics and some visibility on the details. Overall, the most important consideration to understand and evaluate the Fizz & Bubble business, is that the past, present, and future on several relevant topics are very fluid and dependent on numerous unpredictable circumstances and of course access to capital/debt.


**BACKGROUND & CURRENT SITUATION**

Perhaps this is stating the obvious but there are **FIVE STAGES** that we have passed through, and are planning for, that are very different in substance due to financing challenges, market conditions, personnel challenges, access to capital, and of course the current pandemic. The five stages are:

1. **MASS RETAIL LAUNCH & GROWTH —** from late 2015 until the summer of 2018 the company experienced considerable growth and intentionally sacrificed profitability for continued expansion in the domestic mass channel. In the late summer/fall of 2018 the company hit a wall SOLELY due to the purchase order financing behavior of a bad actor (Star Funding) that resulted in millions in losses rather than millions in projected profitability. The Star Funding relationship turned out to be a devastating selection as a purchase order funding source. With almost immediate impact, major customers were lost, relationships damaged beyond repair as a result (e.g. BBB, Staples, Belk, Stage, Macy's, etc.) and of course significant profitability planned for the year was also lost.

2. **ATTEMPTED RECOVERY & PRIVATE EQUITY —** with the above Q3/Q4 2018 debacle, massive holiday SKU returns (late holiday shipments) and damaged customer relationships, in Q1 2019 the company carried over a significant negative balance with Ulta. Cash flow was further exacerbated by similar challenges with other partners including the loss of key accounts as a result. Any and all new sales were absorbed by negative balances, especially with Ulta which lasted the entire year until October when the account turned positive. New customer Kohl's was the only meaningful offset with new sales in Q1/Q2 to all doors and expanded selection in 12 pilot stores. In the spring of 2019 CCG was engaged to market F&B to PE firms exploring a majority exit (and refinancing) and garnered interest from dozens of firms, brands, and an LOI was signed with valuation in the mid $20MM range. The transaction was delayed throughout the summer, and in Q3 ultimately failed, leaving the company in financial dire straits (not market demand) as the PE transaction would have eliminated all debts and provided ample working and growth capital.

3. **INSUFFICIENT CAPITAL & BANKRUPTCY —** In late 2019, having lost the ability to factor, and the damages caused (intentionally) by an interim contracted CFO, the company began to rely on a few marketplace lenders. Further, the timing for Q4 orders, cash requirements, and failure of the PE deal caused the company to not deliver on about $1.5MM in open purchase orders. While the company sought concessions specifically from Kohl's, the landlord, and marketplace lenders (which collectively would have likely allowed ongoing operations and increased revenue/improved losses) — we were unable to continue normal operations and on November 4th filed Chapter 11.

4. **THE PRESENT —** Since the filing, and to fund ongoing operations, Decathlon has been supportive with DIP financing, AR collection continues (albeit diminished) and expenses have been appropriately and considerably reduced. The company is in the middle of a transition period, like most of the planet, adjusting its business model to endure the effects of the pandemic and of course the limitations and burden of raising funds to exit 11. Due to their knowledge of the company and market, CCG was re-engaged to drive financing activities including DIP financing, signing an ABL, and securing capital to both exit 11 and fund 2H20 operations by spring— the pandemic has essentially extended this expectation to early summer 2020, and there remains considerable interest in pre/post PE investments. The company has accordingly adjusted revenue streams, products, distribution, and marketing during this period (e.g. a picot to hand sanitizers) and this and other strategies are described in the subsequent section.

**EXHIBIT 3 - Page 1 of 4**

5. **FUTURE 2H20, 2021+** — Exiting 11 in Q2 has now been delayed into Q3, though the company is continuing executing on plans and current commitments/strategies for 2H20. August/Septmber 2020 will mark the beginning of the transition to a sufficiently funded, more balanced product line/channel strategy in 2021 and beyond. Product, distribution, and revenue mix will evolve as the world re-opens and availability of capital to the company emerges with an international omnichannel distribution strategy. Though we've made some assumptions, neither of these things are predictable for detailed proformas but we have many contingencies in place with a close eye on relevant opportunities.

Considering the major topics of inquiry for discussion/analysis around margins, customers, and pipeline, it is important to understand that the past, present, and future are and will be very different as the company (out of necessity) has had to adapt rapidly given resources/circumstances and access to capital. Margins have an d will change substantially to the positive for example, for two main reasons; 1) less profitable products are being re-worked to acceptable thresholds or are being eliminated and more importantly, 2) the historical reliance on mass retail channels is being radically de-emphasized mainly due to the required heavily discounted wholesale margins, burdensome chargebacks, stock-swapping expenses, fixturing fees, and relentless co-op marketing expenses.

So, what does that mean overall? The past is just that, the past. We've established a very strong brand and delivered fun and useful products to millions of consumers. Lousy margins (compared to selling direct) and the other inefficiencies of Mass Retail Brick-and-Mortar partners are not the largest channel for our plan moving forward, except perhaps a few strategic initiatives. Profitability is moving to the front seat, where there is also still room for considerable quarterly growth for the future with a balanced omnichannel strategy.

### FIZZ & BUBBLE CY20-21 BUSINESS STRATEGY

For the present and 2H20, following is a summary and status/planning for Fizz & Bubble, and some caveats surrounding Revenue Streams, Distribution, Marketing and of course Finance. 2021 will begin to look different as the globe, and the beauty market, recover from the pandemic.

- **REVENUE STREAMS/PRODUCTS** — At present, and for the balance of 2020, we expect to minimize expenses, take advantage of profitable opportunities, and prepare for emergence in 2H20 as soon as possible with or without meaningful new capital. Revenue streams include:

  - *F&B Branded Products* — Traditional high margin, most popular products, and all-new products which can be "tested" online.

  - *Hand Sanitizers* — Opportunistic pivot underway, several customers already sold to, more in pipeline expect 2H20 to be ongoing and for these products to roll into product line.

  - *CBD Centric SKUs* — Chill on hold and CBD SKUs to be funneled through F&B branded channels, many new products underway now. *Soft-launching several titles in Late June/July.*

  - *Private Label* — Conventional F&B, CBD centric, and hand sanitizer customers in play (Cleene closed and major brand in NDA) Dedicated web presence for private label TBD.

  - *Licensed Product Line* — Exciting new product line via license, LOI signed and product sample and concept exchange underway with 40-year brand with global distribution and assuming 2-$5MM wholesale/ direct in CY20 and doubling or more in both CY21 and 22.

- **DISTRIBUTION CHANNELS** — As described above, the current revenue streams are driving distribution strategy AT PRESENT and through CY20, however, this will evolve by channel as capital and resources allow. The primary difference to our past strategy is the de-emphasis of traditional Mass retail.

  - *Web Sites (E-Commerce)* — F&B.com, Chill, W&C, and newly acquired (and customer rich) dollarbathbombs.com, and licensed SKUs (significant).

    - *Dollarbathbombs.com* — assets acquired (website, email lists, social media sites) and are substantial assets to leverage for immediate sales traction and PR leverage.

**EXHIBIT 3 - Page 2 of 4**

- o **Wholesale: Online Partners** — Existing and imminent launch with Amazon, Walmart.com/Jet.com, many others targeted but not yet pitched sanitizers, new CBD offerings.

- o **Wholesale: Mass/Grocery** — Existing/revitalized such as BBB, Belk, TJX, ROSS, etc. Opportunities in regional grocery/drug such as New Seasons ($70K sold/collected April 20). There is robust near immediate opportunity here and limited only by capital available to purchase supplies.

- o **Wholesale: Independents** — Smaller web sites, SMB boutiques, Hospitality, Dispensaries (CBD) note: via outbound telemarketing.

- o **Wholesale: International** — Immediate opportunity Korea and agreement signed with ecommerce leader Coupang, Japan with licensed opportunity mentioned above.

- o **Private Label** — Not a channel per se, as we define this as anything we make (or can make) with another's branding. This does not drive long term brand value.

- o **Flagship/POP** — F&B Branded stores, experiment planned as POP Q4 (Lush-style vertically integrated retail model, low risk but key growth strategy 2021+).

  - ▪ ***Note:*** *to the uniformed this might be red flag, but beauty/cosmetics has been a solid, growing, stable part of the brick and mortar landscape globally*

- **MARKETING & SALES** — Marketing and related sales efforts will continue to be adjusted based on the opportunities to exploit the revenue streams and distribution opportunities described above. Our business plan has not changed since the summer of 2018, and again as described to PE suitors in early 2019, and that is the migration to a higher margin, omnichannel strategy that builds the brand and maximizes profitability. The following are current plans and pre-planning for 2H20 evolution to normalcy as the company both exits 11 and the pandemic subsides. Key components to our marketing strategy include:

  - o **Public Relations** — Conventional PR buttressed with Social Media investments. Minimal now and ramping as results are measured or as capital is available.

    - ▪ *F&B, W&C, Dollar Bath Bombs, and Licensed Brands* — All have or will have dedicated PR and Social Strategies.

    - ▪ *ChicExec PR+ Firm engaged, kickoff meeting May 15, F&B, CBD, Social and even Sales to major wholesale targets.*

  - o **Digital Advertising** — Search (Google/other ads), Display, Social (Facebook, Instagram, Twitter, etc.), results and available capital determines spending. Considerable budget has been forecasted for Amazon and Walmart advertising.

  - o **Web Sites** — Aside from ecommerce the various web sites play critical roles for information and support role for all channels/marketing/sales initiatives.

  - o **Mar/Com** — The company has traditionally handled the majority of packaging, design, photography, etc., in-house and with freelance low-cost consultants and expects to continue to do so albeit with full time staff members.

  - o **Sales Management** — The company is actively building a plan for outbound sales as described above and for expanded internal channel sales support.

- **FINANCE** — Today, the company is in both a planning and low volume production period, hunkering down as we await recently ordered supplies and navigate the due diligence and proforma requirements requested by CCG to address inquiries from PE candidates both in the immediate and longer term. The following topics are worth highlighting for discussion to accurately assess both the company's opportunities as well as its history.

  - o **Present** — As mentioned above, Decathlon has (and remains) supportive of our short-term operational strategy and the longer-term prospects for the brand and has recently forwarded $150K of a $300K commitment. This recently has been buttressed with AR collection and new

**EXHIBIT 3 - Page 3 of 4**

orders recently shipped. An ABL term sheet has been signed, contact redlined and we expect to have in place in June. The credit facility is basically irrelevant for June, but this will be important as the company emerges and ramps sales in general and Mass AR in particular – particularly with new licensed products for big box retailers.

o **Margins —** It will be key to look at our Hero products and historical/planned COGs, where we intend to sell, to get a better feel for margins and gross margins. Over the past several years we have steadily improved COGs, but our current and planned distribution shifts make historical data immaterial for forecasting channels.

o **Re-Capitalization —** The expectation, roughly, is to be able to exit 11 and retain roughly $1MM+ in operating capital buttressed with a new ABL line to monetize AR/Inventory. This will of course determine spending levels for new business and therefore proforma targets for 2H20 and 1H21. Discussions now assume immediate follow-on planning to market the business to PE/Strategic Investors/Acquirers following the exit of 11 in the July/August timeframe.

o **Private Equity —** It would be best to discuss market potential and PE interest in the company with CCG, however, the company is experiencing numerous new opportunities and traction that will continue to brighten business opportunity prospects, increase equity investment appeal, and of course heighten post 11 valuation.

o **Valuation —** It may not be obvious but it's worth mentioning that even though the company's LOI valued the co. in the mid $20MM's, even this was discounted compared to industry norms in M&A for the sector. Valuations are based on growth, typically revenue multiples with EBITDA methods taking a back seat, as both PE firms and strategic buyers (major beauty brands) are focused on brand value and how to leverage distribution globally. We expect valuations to be in the single digits, but who knows as COVID and other macro events have really changed business as usual in the Private Equity space as it has everywhere.

- **MANAGEMENT & INFRASTRUCTURE —** Given the past 18 months, the company has relied primarily on Craig Barnes to drive strategy/management with minimal support to essentially keep the doors and wheels on, begin minimal marketing efforts, license brands, and navigate 11 for the immediate term/11 exit and 2H20. The following are highlights of current and planned management talent and infrastructure depending on resources.

o **Exiting 11/Transition and Operations Oversight —** The current assumption is that with an August exit, and institutional investors onboard, the company will engage (likely in a consulting capacity) an ad hoc CFO/COO to facilitate financial reporting, detailed planning, and instituting formalized operations (accounting/ERP/HR). Once funds allow, and headhunter/recruiting resources can be engaged to supplement or replace outside consultants, it's our desire and expectation to flesh out the rest of management team with senior roles in manufacturing, development, finance, sales and marketing — **all presently unfilled**. Current bookkeeping and light controller level resource is in place.

o **Marketing & Sales —** Existing consulting and in-house people are in place, but industry specific product marketing, private label and international distribution talent is desirable in Q3

o **Systems —** The company was in the late stages of implementing NetSuite ERP and was shelved with the Star funding event of 2018. Though not necessary, it is the ideal solution for F&B given our manufacturing, purchasing, distribution, sales, HR and reporting requirements.

o **Facilities —** Cash requirements and ongoing rent security concerns of prospective landlords are presently delaying relocation (exacerbated by Harsch Properties actions). The company's requirements are minimal/simple as most products are handmade or executed with minimal machinery. Most recently, the company hastily relocated all operations to Tualatin after the **THIRD** illegal and dangerous power disconnect (by practicing self-help eviction including stealing our fuses we paid for) by Harsch Properties as they clearly feel they are above the law. We hope to move altogether in the next several weeks.

**EXHIBIT 3 - Page 4 of 4**

**EXHIBIT 4**

## Fizz & Bubble, LLC
Exhibit 4 - Balance sheet
*As of August 1, 2020*

| | | Aug. 1, 2020 |
|---|---|---:|
| **Assets** | | |
| Cash & savings | $ | 1,058,681 |
| Accounts receivable, net | | - |
| Inventory | | 978,000 |
| Total current assets | | 2,036,681 |
| Plant & equipment, net | | 556,884 |
| Total assets | $ | 2,593,565 |
| | | |
| **Liabilities and equity** | | |
| Accounts payable | | - |
| Other current liabilites | | - |
| Total current liabilities | | - |
| Long term debt | | 750,000 |
| Total liabilities | | 750,000 |
| Equity | | 1,843,565 |
| Total liabilities and equity | $ | 2,593,565 |

Exhibit 4
Page 1 of 1

**EXHIBIT 5**

**LIQUIDATION ANALYSIS**

**Real Estate**

| Location | Estimated Gross Sales Price/Value | Commission & Closing Costs (est. 7%) | Subtotal | Less Liens/ Mortgages | Net to Seller Before Taxes | Available for Creditors |
|---|---|---|---|---|---|---|
| NONE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | |
| **Subtotal, Equity (if any) in Real Estate** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |

**Schedule B - Personal Property**

| Asset | Value | Closing Costs (est. 7%) | Lienholder | Less Liens/ Mortgages | Net Value | Available for Creditors |
|---|---|---|---|---|---|---|
| Cash Accounts | 18,369.00 | | Decathalon | 18,369.00 | 0.00 | 0.00 |
| Accounts Receivable | 937,532.00 | | Decathalon | 937,532.00 | 0.00 | 0.00 |
| Inventory | 1,689,016.00 | | Decathalon | 1,689,016.00 | 0.00 | 0.00 |
| Equipment | 117,738.00 | | Decathalon | 117,738.00 | 0.00 | 0.00 |
| Avoidance Claims [1] | 300,000.00 | | | 0.00 | 300,000.00 | 300,000.00 |
| Third Party Claims [1] | 500,000.00 | | | 0.00 | 500,000.00 | 500,000.00 |
| | | | | | | |
| **Subtotal, Equity (if any) in Personal Property** | **$3,562,655.00** | | | **$2,762,655.00** | **$800,000.00** | **$800,000.00** |
| | | | | | | |
| **TOTALS:** | **$3,562,655.00** | **$0.00** | **$0.00** | **$2,762,655.00** | **$800,000.00** | **$800,000.00** |

| | | |
|---|---|---|
| **FROM EQUITY IN REAL ESTATE:** | **$0.00** | |
| **FROM EQUITY IN PERSONAL PROPERTY:** | **$800,000.00** | |
| **TOTAL EQUITY AVAILABLE FOR CREDITORS** | **$800,000.00** | |
| | | |
| | | |
| **LESS ADMINISTRATIVE EXPENSES:** | | |
| Vanden Bos & Chapman | $175,000.00 | |
| Boverman & Assoc. (examiner) | $25,000.00 | |
| Leonard Law Group | $40,000.00 | |
| Estimated Trustee Attorney & Accountant fees/costs | $50,000.00 | |
| | $290,000.00 | ($290,000.00) |
| | | |
| **LESS CHAPTER 7 TRUSTEE FEES:** | | |
| **Calculation for Trustee's Commission** | | |
| | | |
| Sale Price of Real Property (Less Exemption) | $0.00 | |
| Sale Price of Personal Property (Less Exemption) | $800,000.00 | |
| Subtotal: | $800,000.00 | |
| | | |
| 25% - First $5,000 | $1,250.00 | |
| 10% - $5,000 - $50,000 | $4,500.00 | |
| 5% - $50,000 - $1,000,000 | $37,500.00 | |
| 3% over $1,000,000 | $0.00 | |
| | $43,250.00 | ($43,250.00) |
| | | |
| **Subtotal, Available for Creditors** | | **$466,750.00** |
| | | |
| **LESS PRIORITY CLAIMS:** | | |
| IRS | ($954,780.57) | ($418,201.68) |
| ODR | ($110,838.86) | ($48,548.32) |
| | | ($466,750.00) |
| | | |
| **LESS SECURED CLAIMS:** | | |
| | | $0.00 |
| | | |
| **TOTAL AVAILABLE FOR UNSECUREDS:** | | $0.00 |

[1] Avoidance Claims and Third-Party Claims are litigation claims with an unknown value and an unknown amount of fees and expenses to be incurred before any recovery is obtained. As with any litigation claims, there is a risk that the claim will yield little or no recovery. The values listed are merely estimates and do not reflect the debtor's maximum recovery, claim amount, a waiver to assert additional amounts, or a willingness to compromise any claims for the amounts listed.

Exhibit 5
Page 1 of 1

DRAFT
All figures are subject to change until reviewed with tax counsel and/or CPA.

**EXHIBIT 6**

# Fizz and Bubble
## Exhibit 6 - Monthly Cash Flow Projection
### For the Years Ended December 31, 2020 and 2021

| Summary | | 8/31/2020 Forecast | 9/30/2020 Forecast | 10/31/2020 Forecast | 11/30/2020 Forecast | 12/31/2020 Forecast | 1/31/2021 Forecast | 2/28/2021 Forecast | 3/31/2021 Forecast | 4/30/2021 Forecast | 5/31/2021 Forecast | 6/30/2021 Forecast | 7/31/2021 Forecast | 8/31/2021 Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance, Beginning | | 1,058,681 | 1,180,794 | 1,548,970 | 1,890,783 | 2,186,946 | 2,489,341 | 2,521,507 | 2,594,884 | 2,686,242 | 2,712,827 | 2,885,619 | 3,051,882 | 3,189,605 |
| Cash Receipts | | 918,200 | 1,872,050 | 2,218,050 | 1,776,300 | 1,403,500 | 1,068,500 | 1,165,100 | 1,379,200 | 1,601,050 | 1,835,500 | 1,968,700 | 1,999,250 | 2,629,950 |
| Cash Disbursements | | 796,087 | 1,503,875 | 1,876,237 | 1,480,137 | 1,101,105 | 1,036,334 | 1,091,723 | 1,287,843 | 1,574,465 | 1,664,708 | 1,790,438 | 1,871,526 | 2,289,400 |
| Cash Balance, Ending | | 1,180,794 | 1,548,970 | 1,890,783 | 2,186,946 | 2,489,341 | 2,521,507 | 2,594,884 | 2,686,242 | 2,712,827 | 2,883,619 | 3,051,882 | 3,189,605 | 3,529,855 |
| **SALES AND OTHER CASH RECEIPTS** | | | | | | | | | | | | | | |
| Wholesale - National Accounts | | 385,700 | 1,079,550 | 1,358,050 | 833,800 | 614,000 | 536,000 | 448,600 | 627,700 | 611,050 | 748,000 | 886,200 | 801,750 | 1,112,150 |
| Wholesale - Discounters | | 70,000 | 70,000 | 70,000 | 35,000 | 70,000 | 70,000 | 60,000 | 76,500 | 76,500 | 107,500 | 107,500 | 132,500 | 105,000 |
| Wholesale - Independents | | 35,000 | 55,000 | 80,000 | 180,000 | 76,500 | 60,000 | 76,500 | 76,500 | 107,500 | 107,500 | 107,500 | 132,500 | 132,500 |
| Branded Retail Stores (F&B Stores) | | 25,000 | 30,000 | 40,000 | 50,000 | 25,000 | 25,000 | 25,000 | 55,000 | 85,000 | 200,000 | 220,000 | 270,000 | 270,000 |
| International | | 7,500 | 40,000 | 40,000 | 50,000 | 75,000 | 152,500 | 152,500 | 55,000 | 113,000 | 113,000 | 115,000 | 200,000 | 200,000 |
| E-Commerce & Direct | | 235,000 | 302,500 | 490,000 | 625,000 | 530,000 | 295,000 | 375,000 | 450,000 | 500,000 | 530,000 | 550,000 | 595,000 | 630,000 |
| Private Label | Daily -45-60 | 240,000 | 195,000 | 140,000 | 32,500 | 32,500 | 32,500 | 32,500 | 60,000 | 60,000 | 90,000 | 90,000 | 120,000 | 120,000 |
| **Total Receipts** | | 918,200 | 1,872,050 | 2,218,050 | 1,776,300 | 1,403,500 | 1,068,500 | 1,165,100 | 1,379,200 | 1,601,050 | 1,835,500 | 1,968,700 | 1,999,250 | 2,629,950 |
| **INVENTORY** | | | | | | | | | | | | | | |
| Raw Materials | 12% | 123,000 | 276,000 | 353,400 | 247,800 | 160,980 | 136,500 | 148,680 | 179,880 | 216,300 | 237,000 | 257,700 | 260,700 | 350,100 |
| Packaging | 15% | 143,500 | 323,050 | 382,850 | 268,450 | 174,395 | 170,625 | 185,850 | 224,850 | 270,375 | 297,375 | 322,125 | 304,150 | 408,450 |
| **Subtotal - Inventory Transactions** | | 266,500 | 599,050 | 736,250 | 516,250 | 335,375 | 307,125 | 334,530 | 404,730 | 486,675 | 535,275 | 579,825 | 564,850 | 758,550 |
| **ORDINARY COURSE DISBURSEMENTS** | | | | | | | | | | | | | | |
| *Payroll and Related:* | | | | | | | | | | | | | | |
| Payroll COGS | 20% | 205,000 | 461,500 | 589,000 | 413,000 | 268,300 | 227,500 | 247,800 | 299,800 | 360,500 | 396,500 | 429,500 | 434,500 | 583,500 |
| Payroll Admin | | 55,000 | 60,000 | 60,000 | 60,000 | 70,000 | 60,000 | 82,350 | 116,300 | 149,500 | 152,880 | 175,600 | 202,550 | 194,100 |
| Payroll taxes @ 22.5% | 22.5% | 58,500 | 117,338 | 147,150 | 107,550 | 76,118 | 71,044 | 97,325 | 93,623 | 114,750 | 123,593 | 135,473 | 143,336 | 179,440 |
| Benefits | | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| **Subtotal** | | 326,500 | 646,838 | 813,650 | 598,050 | 426,918 | 399,294 | 422,778 | 509,723 | 624,750 | 672,893 | 737,573 | 780,386 | 985,040 |
| *Professional Fees / Finance / Legal / Advisory / Design / Engineers* | | | | | | | | | | | | | | |
| Accounting | | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| Legal | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Business Consulting | | | | | | | | | | | | | | |
| Investment Banking/Other | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Sales Commissions | | 250 | 12,000 | 12,000 | 19,500 | 11,475 | 9,000 | 20,000 | 11,475 | 16,125 | 16,125 | 16,125 | 19,875 | 19,875 |
| **Subtotal** | | 16,250 | 8,250 | 23,000 | 30,500 | 22,475 | 20,000 | 11,000 | 22,475 | 27,125 | 27,125 | 27,125 | 30,875 | 30,875 |
| *Operating Expenses:* | | | | | | | | | | | | | | |
| Facilities Lease | | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| Equipment Leases (no software/Auto) | | 7,500 | 7,500 | 12,500 | 12,500 | 12,500 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Auto/Parking/Fuel | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Freight-Out/Shipping | | 80,000 | 118,000 | 170,000 | 202,000 | 188,000 | 165,250 | 178,750 | 206,250 | 271,250 | 264,750 | 281,250 | 312,750 | 332,250 |
| Marketing | | 12,000 | 15,000 | 20,000 | 20,000 | 20,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Travel, Meals & Entertainment | | 5,000 | 5,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Office & Administrative | | 19,979 | 19,979 | 20,979 | 20,979 | 20,979 | 24,250 | 24,250 | 24,250 | 27,250 | 27,250 | 27,250 | 28,250 | 28,250 |
| Supplies (e.g. Gloves, Tape, etc - Uline) | | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 35,000 | 35,000 | 35,000 | 50,000 | 50,000 |
| Utilities (e.g. elec, water, etc.) | | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 10,000 | 10,000 | 10,000 | 12,000 | 12,000 |
| Storage (Extra Pallets) | | | | | | | | | | | | | | |
| Repairs (Parts & Services) | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Other/Contingency | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Long Term Debt - IRS | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | | | | | | | | |
| Other | | 1,000 | 12,858 | 11,858 | 11,858 | 11,858 | 12,915 | 12,915 | 12,915 | 12,915 | 12,915 | 12,915 | 12,915 | 12,915 |
| **Subtotal** | | 186,837 | 237,837 | 303,337 | 335,337 | 316,337 | 309,915 | 323,415 | 350,915 | 435,915 | 429,415 | 445,915 | 495,415 | 514,915 |
| **Total Ordinary Course Reimbursements** | | 529,587 | 903,935 | 1,139,987 | 963,887 | 765,730 | 729,209 | 757,193 | 883,113 | 1,087,790 | 1,129,433 | 1,210,613 | 1,306,676 | 1,530,850 |
| **Total Disbursements** | | 796,087 | 1,503,875 | 1,876,237 | 1,480,137 | 1,101,105 | 1,036,334 | 1,091,723 | 1,287,843 | 1,574,465 | 1,664,708 | 1,790,438 | 1,871,526 | 2,289,400 |
| **Net Cash for the Period** | | 122,113 | 368,176 | 341,813 | 296,163 | 302,396 | 32,166 | 73,377 | 91,358 | 26,585 | 170,793 | 178,263 | 692,574 | 1,098,800 |

EXHIBIT 6 Page 1 of 2

# Fizz and Bubble
## Exhibit 6 - Monthly Cash Flow Projection
### For the Years Ended December 31, 2020 and 2021

| | | Forecast 9/30/2021 | Forecast 10/31/2021 | Forecast 11/30/2021 | Forecast 12/31/2021 |
|---|---|---|---|---|---|
| **Summary** | | | | | |
| Cash Balance, Beginning | | 3,529,855 | 3,988,213 | 4,751,172 | 5,440,892 |
| Cash Receipts | | 3,319,050 | 4,361,300 | 3,822,950 | 2,891,550 |
| Cash Disbursements | | 2,860,693 | 3,598,341 | 3,133,230 | 2,310,023 |
| Cash Balance, Ending | | 3,988,213 | 4,751,172 | 5,440,892 | 6,022,419 |
| **SALES AND OTHER CASH RECEIPTS** | | | | | |
| Wholesale - National Accounts | | 1,946,550 | 2,461,300 | 1,700,450 | 1,197,550 |
| Wholesale - Discounters | | - | 52,500 | 17,500 | 17,500 |
| Wholesale - Independents | | 132,500 | 175,000 | 130,000 | 76,300 |
| Branded Retail Stores (F&B Stores) | | 280,000 | 80,000 | 480,000 | 680,000 |
| International | | 175,000 | 365,000 | 290,000 | 175,000 |
| E-Commerce & Direct | | 665,000 | 465,000 | 1,075,000 | 650,000 |
| Private Label | | 120,000 | 720,000 | 95,000 | 95,000 |
| **Total Receipts** | | 3,319,050 | 4,361,300 | 3,822,950 | 2,891,550 |
| **INVENTORY** | | | | | |
| Raw Materials | 12% | 476,100 | 639,000 | 491,400 | 324,180 |
| Packaging | 15% | 555,450 | 692,250 | 532,350 | 351,195 |
| Daily 45-60 | | | | | |
| **Subtotal - Inventory Transactions** | | 1,031,550 | 1,331,250 | 1,023,750 | 675,375 |
| **ORDINARY COURSE DISBURSEMENTS** | | | | | |
| *Payroll and Related:* | | | | | |
| Payroll COGS | 20% | 793,500 | 1,065,000 | 819,000 | 540,300 |
| Payroll Admin | | 217,450 | 270,450 | 308,400 | 374,400 |
| Payroll taxes @ 22.5% | 22.5% | 227,453 | 300,476 | 253,665 | 205,808 |
| Benefits | | 8,000 | 12,500 | 12,500 | 12,500 |
| Subtotal | | 1,246,353 | 1,648,426 | 1,393,565 | 1,133,008 |
| *Professional Fees / Finance / Legal / Advisory / Design / Engineers* | | | | | |
| Accounting | | 6,000 | 6,000 | 6,000 | 6,000 |
| Legal | | 6,000 | 6,000 | 6,000 | 6,000 |
| Business Consulting | | | | | |
| Investment Banking/Other | | 5,000 | 5,000 | 5,000 | 5,000 |
| Sales Commissions | | 12,000 | 12,000 | 19,500 | 11,475 |
| Subtotal | | 30,875 | 23,000 | 38,500 | 22,475 |
| *Operating Expenses:* | | | | | |
| Facilities Lease | | 22,000 | 22,000 | 22,000 | 22,000 |
| Equipment Leases (no software/Auto) | | 20,000 | 20,000 | 20,000 | 20,000 |
| Auto/Parking/Fuel | | 5,000 | 5,000 | 5,000 | 5,000 |
| Supplies (e.g. Gloves, Tape, etc - Uline) | | 50,000 | 60,000 | 60,000 | 25,000 |
| Utilities (e.g. elec, water, etc.) | | 12,000 | 12,000 | 12,000 | 12,000 |
| Storage (Extra Pallets) | | | | | |
| Repairs (Parts & Services) | | 2,500 | 2,500 | 2,500 | 2,500 |
| Other/Contingency | | 5,000 | 5,000 | 5,000 | 5,000 |
| Marketing | | 366,750 | 396,500 | 486,250 | 320,000 |
| Freight-Out/Shipping | | 15,000 | 15,000 | 15,000 | 15,000 |
| Travel, Meals & Entertainment | | 12,500 | 15,000 | 15,000 | 15,000 |
| Office & Administrative | | 28,250 | 29,750 | 29,750 | 29,750 |
| Long Term Debt - IRS | | 12,915 | 12,915 | 12,915 | 12,915 |
| Other | | | | | |
| Subtotal | | 551,915 | 595,665 | 685,415 | 479,165 |
| **Total Ordinary Course Reimbursements** | | 1,829,143 | 2,267,091 | 2,109,480 | 1,634,648 |
| **Total Disbursements** | | 2,860,693 | 3,598,341 | 3,133,230 | 2,310,023 |
| **Net Cash for the Period** | | 1,489,908 | 2,094,209 | 1,713,470 | 1,256,903 |

EXHIBIT 6 Page 2 of 2

**EXHIBIT 7**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 19-34092-tmb11 |
| Fizz & Bubble, LLC | BALLOT FOR ACCEPTING OR REJECTING DEBTOR'S |
| Debtor-in-Possession. | PLAN |

Filed By: _____ on:_____
                 (Company or Creditor's Name)        (Date)

Number of your Class in the Plan: _____.

The Plan referred to in this ballot can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in total dollar amount and more than one-half in number of Claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class rejecting it. To have your vote count, you must complete and return this ballot.

The undersigned: (check one box)

☐ Accepts       ☐ Rejects

the Debtor's Plan of Reorganization of the above-named Debtor.

Signed: _____Title: _____ Phone No. _____

Street: _____ City:_____ State: ___ Zip: _____

Return this ballot on or before the date specified in the court order accompanying this Plan and Disclosure Statement to:

**DOUGLAS R. RICKS**
**ATTN: COLIN**
**BALLOTS**
The Spalding Building, Suite 520
319 S.W. Washington Street
Portland, Oregon 97204-2620
Phone: (503) 241-4869
Fax: (503) 241-3731

**NOTICE: "THIS FORM DOES NOT CONSTITUTE A PROOF OF CLAIM AND MAY NOT BE USED TO FILE A CLAIM OR TO INCREASE ANY AMOUNT LISTED IN THE DEBTOR SCHEDULES."**

**EXHIBIT 7 - Page 1 of 2**       **- OVER -**

## SPECIAL ELECTION CLASS

Any Class 9 Creditor may elect to be included in Class 8 which consists of those Creditors holding allowed general Unsecured Claims who consent to receive a one-time payment at an amount less than the full value of their allowed general Unsecured Claims.

Please indicate below if you wish to be included within Class 8.  (If nothing is marked, you will be within the class as defined in the Plan.)

**_____** Yes, I want to be included in Class 8 and receive a one-time payment of 25% in full and final satisfaction of my Claim, not to exceed 25% of $1,000 (One Thousand Dollars).

**_____** No, I want to remain in Class 9.

**EXHIBIT 7 - Page  2 of 2**